ANITA TEDROW and DONALD TEDROW, Appellants

v.

TE'O MANUMA for himself and as personal representative of
RYAN MANUMA, Decedent, Appellee

In The Matter of the Special Guardianship of RONALD
HANS TEDROW, ELKI EVELYN TEDROW, CHARLENE ANN
TEDROW, NELLIE TEDROW, and STEVEN TEDROW, Minors

WILLIAM REARDON, Special Guardian, and
DONALD TEDROW, Appellants

High Court of American Samoa
Appellate Division

AP No. 6-88
AP No. 10-88

August 25, 1989

Before KRUSE, Chief Justice, CANBY,* Acting Associate Justice, THOMPSON,** Acting Associate Justice, and AFUOLA, Associate Judge.

Counsel: For Appellants, William H. Reardon
For Appellees, Asaua Fuimaono

Per Canby, J.:

These appeals arise from decisions of the trial court invalidating a transfer of real estate as a fraud upon a judgment creditor, and directing disposition of the proceeds of sale of that real estate.

---

\* Honorable William C. Canby, Jr., Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

\*\* Honorable David R. Thompson, Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

In 1983, Mrs. Tedrow took by assignment the purchaser's interest in a contract for deed for the land in question. In 1984, appellee Te'o Manuma obtained a judgment of $90,000 against Mrs. Tedrow for the wrongful death of Teo's son. In 1986, the payments for the purchase of the real estate, which had been made by Mr. Tedrow, were completed. Instead of the land being deeded to Mrs. Tedrow as contract purchaser, however, the land was deeded to the Tedrow children. No consideration was paid by the children for the transfer. Mr. and Mrs. Tedrow continued to occupy the land, living in a house that Mr. Tedrow had constructed upon it. Some eleven months after the property was deeded to the children, arrangements were made for its sale. Te'o Manuma then moved to invalidate the transfer as a fraud to evade payment of his judgment debt.

The land was sold by Mr. Reardon, as guardian of the children, with the approval of the trial court, but the court later ruled that the conveyance to the children was fraudulent. The court accordingly held that Te'o Manuma was entitled to the proceeds of sale, but that as a matter of equity Mr. Tedrow, who paid for the land and constructed the house upon it, should be awarded half of the proceeds. [*Te'o v. Continental Insurance Co.*, 6 A.S.R.2d 135 (1987) (Opinion and Order on Motion to Invalidate Deed).] Thus, of the $65,000 sale price, $32,500 was awarded to Te'o Manuma and $32,500 to Mr. Tedrow, but all of the proceeds were ordered to be held in the registry of the court pending appeals. As it turned out, the Tedrows appealed the award of $32,500 to Te'o Manuma, but Te'o Manuma did not appeal the award of $32,500 to Mr. Tedrow.

Mr. Tedrow subsequently moved for release of the $32,500 awarded to him, and asked the court to approve a distribution of it between himself and the children. The court released the $32,500 to Mr. Tedrow, but ordered that the entire amount be held subject to a trust in favor of the children, until the proper disposal of the proceeds was determined on appeal. [*In re Special Guardianship of Tedrow*, 9 A.S.R.2d 72 (1988).] Mr. Tedrow appeals that order of the court.

In attacking the trial court's ruling that the transfer to the children was fraudulent, the Tedrows first contend that the land was exempt from execution and consequently could not be the subject of a fraudulent transfer. A.S.C.A. § 43.1528(a) provides that "[n]o real property of a Samoan may be subject to sale under a writ of a court to satisfy any judgment." Thus, if Mrs. Tedrow, who is Samoan, had

merely taken title to the land and continued to hold it, Te'o Manuma could never have levied upon it.

The land was not held by Mrs. Tedrow, however, nor was it held for long by her children. It was sold, and the question then arises whether the proceeds of sale were subject to the same immunity from excution that the land enjoyed while it was held by a Samoan debtor. The Tedrows argue that the exemption attaches to the proceeds, analogizing this case to those involving the exemption of homesteads from execution. The analogy is not entirely helpful, however. Many jurisdictions that recognize the homestead exception do not permit it to apply to the proceeds of a voluntary sale of the homestead. *See* 40 Am. Jur. 2d Homestead § 46. Others protect the proceeds only for a reasonable time, to permit reinvestment in another homestead. *Id.* Thus the Uniform Homestead Act protects the traceable proceeds of sale only for 8 months. Uniform Homestead Act § 9(a); *see* 40 Am. Jur. 2d Homestead § 47 (Supp. 1989).

The analogy to homesteads is also deficient for the reasons set forth by the trial court. The purpose of the homestead exemption is to protect a rather small investment in a homestead as a minimum means of survival for the debtor. That policy is served by protecting, at least for a time, the proceeds of sale of a homestead, so that the debtor may be able to obtain shelter. The purpose of A.S.C.A. § 43.1528(a) is to protect land held by Samoans from being alienated, or at least from being alienated involuntarily. The exemption applies to all land owned by a Samoan, no matter how extensive the holdings. Once the land is voluntarily sold, the policy against alienation is no longer served by protecting the proceeds. Nor would the proceeds necessarily represent some minimal stake essential for the debtor's survival. We conclude, therefore, that the trial court was correct in holding that the exemption provided by § 43.1528(a) does not attach to the proceeds after a voluntary sale of the property. If Mrs. Tedrow had taken title to the property herself and then sold it, Te'o Manuma would accordingly be entitled to levy on the proceeds.

Mrs. Tedrow did not sell the land herself, however; she conveyed it to her children, who sold it. The Tedrows contend that, because the property would have been exempt from execution in her hands, its transfer cannot constitute a fraud upon a creditor. There is considerable authority in support of the general proposition that a transfer of exempt assets cannot constitute a fraud upon creditors. *See e.g.*, 37 Am. Jur. 2d Fraudulent Conveyances §§ 103-104 and cases there cited.

54

We cannot, however, view the transfer of the property in this case apart from its sale shortly thereafter. The trial court found that the transfer and sale was an arrangement intended to accomplish indirectly that which could not have been accomplished by Mrs. Tedrow directly -- the sale of the property for cash without rendering the proceeds susceptible to levy by Te'o Manuma. Under these circumstances, we conclude that the trial cout was correct in ruling that the transaction as a whole was fraudulent as to Te'o Manuma, the judgment creditor.

The Tedrows next argue that there was no fraudulent intent. They point out that the names of two of the children, with ditto marks, were written on the assignment of the contract of purchase in 1983, before Te'o Manuma obtained his judgment. Nevertheless, the assignment clearly designated Mrs. Tedrow as purchaser, and she became equitable owner of the property upon the assignment. When she subsequently caused her mature interest to be conveyed to her children, the children paid no consideration. Mrs. Tedrow apparently held no other assets to satisfy her judgment debt, and had successfully avoided Te'o Manuma's attempts at collection. There were consequently sufficient badges of fraud to permit the trial court to find, as it did, that the entire arrangement was fraudulent as to her judgment creditor. *See* 37 Am. Jur. 2d Fraudulent Conveyances § 17.

Mr. Tedrow raises due process objections to the trial court's decision, stating that the court, without obtaining jurishdiction over him, subjected his interest in the marital property to Mrs. Tedrow's debt. We agree with the trial court that Mr. Tedro had sufficiently invoked the remedial powers of the court to subject himself to its jurisdiction. Moreover, Tedrow had intentionally participated in the assignment of the purchaser's interest to Mrs. Tedrow. Like other non-Samoans married to Samoans, Mr. Tedrow apparently permitted Mrs. Tedrow to be named as purchaser becase she was legally eligible to purchase the property. Having sought the benefits of his wife's eligibility to hold title, Mr. Tedrow cannot now escape the consequences of her being named as sole purchaser of the property. Mr. Tedrow had no protectable legal interest in the property, although the trial court accorded him equitable protection to the extent of one-half of the proceeds. There has been no violation of due process.

Tedrow's appeal of the trial court's order subjecting his $32,500 to a trust in favor of the children retains little importance, in light of our affirmance of the decision that the transaction was fraudulent. As the trial court indicated, the fraudulent transfer conveyed nothing to the

children. Mr. Tedrow is entitled to the entire $32,500 that represents his equitable share. The trial court's order imposing a trust in favor of the children pending appeal was correct when entered and we affirm it, but it necessarily expires by its own terms upon the entry of our decision here.

The decisions of the trial court are AFFIRMED.